UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
TERI EISNER, as Preliminary Executrix of the Estate
of STANLEY EISNER, deceased,

                      Plaintiff,

                -against-

UNITED STATES OF AMERICA,

                  Defendant.
-------------------------------------------------------------------x

**MEMORANDUM AND ORDER**
21-CV-06834 (OEM) (ARL)

ORELIA E. MERCHANT, United States District Judge:

Plaintiff Teri Eisner ("Plaintiff"), as the preliminary executrix of the estate of her father, Decedent Stanley Eisner ("Decedent"), commenced this action against Defendant the United States of America ("Defendant") asserting claims for negligence, medical practice, and wrongful death under the Federal Torts Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.,* and 28 U.S.C. § 1346(b)(1).  Plaintiff alleges that, on June 3, 2019, while at the United States Department of Veterans Affairs Medical Center located in Northport New York ("Northport VA Medical Center"), Decedent walked to the bathroom unassisted where he fell and broke his left hip and that the medical treatment he subsequently received led to his death on March 29, 2020, at the Northshore University Hospital ("NSUH").  Verified Complaint ("Compl."), ECF 1.

Before the Court is Defendant's fully briefed motion to dismiss under Federal Rule of Civil Procedure 12(h)(3) for lack of subject matter jurisdiction or, alternatively, motion for summary judgment under Rule 56.[1]  For the following reasons, Defendant's motion is granted.

---

[1] Defendant's Motion for Summary Judgment, ECF 35; Defendant's Memorandum of Law In Support of Motion (Def.'s Mem."), ECF 35-1; Defendant's Local Rule 56.1 Statement ("Def.'s 56.1"); Declaration of Assistant United States Attorney Diane C. Leonardo ("Leonardo Decl."), ECF 36; Exhibits A-M, ECF 36-1-36-13; Plaintiff's Memorandum of Law In Opposition ("Pl.'s Opp."), ECF 38; Declaration of Joseph G. Dell ("Dell Decl."), ECF 37,

# BACKGROUND

## A.    Plaintiff's Allegations[2]

Before his visit to the Northport VA Medical Center on June 3, 2019, Decedent was diagnosed with chronic kidney disease, renal insufficiency, diabetes mellitus, and anemia.  Pl.'s 56.1 ¶¶ 3, 4, 6.

On June 3, 2019, Plaintiff accompanied Decedent to Northport VA Medical Center receive a Procrit injection for his anemia.  *Id.* ¶¶ 7, 9; *see also* Compl. ¶ 18.  There, while waiting for his injection, Decedent walked to the bathroom unassisted.  Pl.'s 56.1 ¶ 12.  Plaintiff and Decedent did not ask anyone to assist Decedent in walking to the bathroom or to provide him a urinal.  *Id.* ¶¶ 17, 18.  Plaintiff "was not concerned when [D]ecedent walked to the . . . bathroom because he was 'one hundred percent independent'" and Decedent was a fast walker and had no problem walking.  *Id.* ¶¶ 11, 15.  Decedent fell while in the bathroom and injured his left hip.  *Id.* ¶ 14.  The floor of the bathroom where Decedent fell "had no objects [that] obstruct[ed] Decedent's path on the floor."  *Id.* ¶ 19.  Plaintiff asserts that, as a result of the fall, Decedent "sustained great pain, agony, suffering, injury, infection, loss of autonomy, loss of range of motion, loss of mobility . . ., [and] disability" that resulted in "extended hospitalization, surgery, mental anguish, emotional distress and ultimately, death."  Compl. ¶¶ 20, 31.  Plaintiff also asserts that the medical care, diagnosis, and treatment that Decedent received at Northport VA Medical Center was rendered negligently and failed to conform with accepted standards of medical care.  *Id.* ¶ 19.

---

Plaintiff's Response to Defendant's 56.1 Statement ("Pl.'s 56.1"), ECF 37-1; Defendant's Reply ("Def.'s Reply"), ECF 39; Defendant's Reply to Plaintiff's Additional Asserted Facts ("Def.'s 56.1 Reply").

[2] The following relevant undisputed facts are drawn from the verified complaint and the parties' respective 56.1 statements.  Compl.; Def.'s 56.1; Pl.'s 56.1. A court may consider a plaintiff's verified complaint as an affidavit under Rule 56(c) for summary judgment purposes insofar as the statements therein were made on personal knowledge.  *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) ("[A] verified pleading . . . has the effect of an affidavit and may be relied upon to oppose summary judgment."); *see also Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("A verified complaint is to be treated as an affidavit for summary judgment purposes.")

The next day, on June 4, 2019, Decedent was transferred to NSUH where he was hospitalized.  Pl.'s 56.1 ¶ 22.  There, Decedent was treated for his injuries from the fall, and on June 6, 2019, he underwent hemodialysis for the first time.  *Id.* ¶¶ 22, 23.  Between June 28, 2019, and October 2019, Decedent was transferred between several medical centers for dialysis and rehabilitation until his discharge.  *Id.* ¶¶ 24-27.

On October 22, 2019, Decedent fell at his home.  Pl.'s 56.1 ¶ 28.  He was evaluated for the fall at the NSUH's emergency department and was discharged the same day.  *Id.*  Later that day, Decedent began dialysis treatment at the Bayside Dialysis Center ("Bayside").  *Id.* ¶ 29.

On December 5, 2019, Decedent fell in the bathroom at Bayside, but Plaintiff refused to take her father to the hospital.  Pl.'s 56.1 ¶ 31.  Decedent was subsequently treated at NSUH for a fracture to his hip where there was a finding of acute comminuted fracture of the right ischium.  *Id.* ¶ 32.  Decedemt was hospitalized at NSUH until his transfer on December 19, 2019, to The Pavilion at Queens for Rehabilitation & Nursing ("the Pavilion").  *Id.* ¶¶ 33-34.  Decedent remained at the Pavilion from December 19, 2019, until his discharge on January 7, 2020.  *Id.* ¶¶ 33-34.

In March 2020, Decedent fell once again at his home.  Pl.'s 56.1 ¶¶ 35.  He was admitted to NSUH on March 28, 2020, where he died the following day.  *Id.* ¶¶ 36- 37.

## B.     Plaintiff's Administrative Claim

An attorney for Plaintiff submitted her administrative claims by mailing a Standard Form 95 ('SF-95") dated June 3, 2021, with a cover letter dated June 3, 2021, to the Office of General Counsel of the Department of Veterans Affairs.  Standard Form 95 ("SF 95"), ECF 36-1. In the "basis of claim" section of the SF-95, Plaintiff wrote:

> Plaintiff alleges that on 6/3/19, the decedent, Stanley Eisner . . ., was negligently supervised at [Northport VA Medical Center] on 6/3/19, such that the was permitted

3

to go to the bathroom, unattended, despite being a high fall risk, and that while in the bathroom, he slipped and fell, sustaining a pelvic fracture, hematoma and other injuries, which proximately caused his death on 3/31/20.

*Id.* at 2.  Under the "personal injury/wrongful death" section of the SF-95, Plaintiff provided the following statement of claims:

> Decedent Stanly Eisner . . ., while unattended, slipped and fell in a bathroom, at [Northport VA Medical Center] on 6/3/19, at approximately 7:00 p.m. He sustained a fractured pelvis and other injuries, including hematoma. Decedent died on 3/31/20 of complications from the slip and fall on 6/3/19, including: acute left inferior comminuted pubis ram[u]s fracture and acute fracture of left superior pubic acetabular junction.

*Id.*  The scanned envelope shows that the Department of Veterans Affairs received and inspected the mailing on June 8, 2021. *Id.* at 4.  A letter dated June 15, 2021, from the Office of General Counsel of the Department of Veterans Affairs to Plaintiff's counsel Patrick G. Toner, states that the Department received Plaintiff's tort claims on June 8, 2021.  *See* Compl. Ex. A.

**C.    Plaintiff's Application in Surrogate Court of Queens County**

On November 18, 2021, Plaintiff applied for preliminary letters testamentary in Surrogate Court of Queens County, New York.  Leonardo Decl. Ex. J, ECF 36-10, Application for Preliminary Letters Testamentary, *In the Matter of the Probate Proceeding of Stanley Stuart Eisner, a/k/a Stanley Eisner*, File No.: 2021-2158 (Surrogate's Court of the State of New York, Nov. 18, 2021).  Plaintiff requested preliminary letters for the following reasons:

> The Estate is faced with imminent risk of irreparable harm if an Executor is not appointed by December 3, 2021, because the statute of limitations on certain claims of decedent [Eisner] for medical malpractice will expire on said date if a cause of action is not timely commenced.  [Plaintiff] seeks to pursue claims for the conscious pain and suffering and wrongful death of [Eisner] sustained as a result of a slip and fall which occurred on June 3, 2019 at the Northport Veterans Administration Medical Center, and which resulted in a fractured hip, hematoma and other injuries, which, ultimately resulted in [Eisner's] death on March 29, 2020.  The claims will be asserted [NSUH], [New York University], and Glengariff Rehabilitation and Healthcare Cetner.

4

Plaintiff also seeks authority as Preliminary Executor to sell the real property located at 56-25 185th Street, Fresh Meadows, New York in accordance with SCPA 1412(3)(a).

*Id.* at 1.

On December 2, 2021, Plaintiff was appointed as the preliminary executrix of the estate of Stanley Eisner by the Surrogate's Court of Queens County, New York. Leonardo Decl. Ex. L, ECF 36-12, Order for Preliminary Letters Testamentary, *In the Matter of the Probate Proceeding of Stanley Stuart Eisner, a/k/a Stanley Eisner* (Dec. 2, 2021). Relevant to here, the Surrogate Court "ORDERED that said preliminary letters are restricted solely to allow for the marshalling and collection of estate assets." *Id.* at 1.

### D. Procedural History

On December 10, 2021, Plaintiff commenced this action by filing a verified complaint and exhibit. *See* Compl.; Compl. Ex. A. Defendant answered the complaint, and the parties engaged in discovery, which closed on September 27, 2023. *See* Answer, ECF 10; August 8, 2023 Docket Entry Order; May 23, 2024 Order, ECF 31.

On December 8, 2023, Defendant served on Plaintiff its motion to dismiss under Rule 12(h)(3) for lack of subject-matter jurisdiction, or alternatively, motion for summary judgment under Rule 56 supported by a 56.1 Statement, a declaration, and 13 exhibits.[3] On the date that Plaintiff's opposition papers were due, Plaintiff's counsel moved to withdraw, which the Court denied. First Motion to Withdraw, ECF 28; Docket Entry Order dated March 6, 2024.[4] Counsel renewed his motion, ECF 30, but the Court again denied the application because Plaintiff

---

[3] Def.'s Mem.; Def.'s 56.1; Leonardo Decl.; Exhibits A-M, ECF 36-1-36-13.
[4] Plaintiff mailed pro se letters to the Court indicating that she objected to the withdrawal of her counsel because counsel had been representing her for five years and a withdrawal at this stage would prejudice her and her claims. Plaintiff's pro se letters were returned to her by the Court's Pro Se Office without docketing or consideration because she was still represented by counsel. *See* ECF 29, 32.

did not consent to the withdrawal and, given the timing of the request—in the middle of dispositive motion practice— "there [was] no guarantee that substitute counsel could otherwise be retained." Order, ECF 31. Plaintiff filed a response in opposition, supported by a declaration that included additional asserted material facts[5] and 56.1 Counterstatement, and Defendant filed a reply supported by a 56.1 Reply to Plaintiff's additional asserted material facts.[6]

## LEGAL STANDARDS

### A.  Federal Rule of Civil Procedure Rule 12(h)(3)

"The standard governing a Rule 12(h)(3) motion is the same as that governing a motion under Rule 12(b)(1)" for lack of subject-matter jurisdiction. *Bell v. Ramirez*, 13-CV-7916 (PKC), 2014 WL 7178344, at *2 (S.D.N.Y. Dec. 9, 2014) (first citing *Greystone Bank v. Tavarez*, 9-CV-5192 (SLT), 2010 WL 3325203, at *1 (E.D.N.Y. Aug. 19, 2010); then citing *Peterson v. Cont'l Airlines, Inc.*, 970 F. Supp. 246, 248-49 (S.D.N.Y. 1997)).

### B.  Federal Rule of Civil Procedure 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  The party asserting subject matter jurisdiction must establish by a preponderance of the evidence that jurisdiction exists. *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008).  In evaluating a Rule 12(b)(1) motion to dismiss, a district judge must "accept[ ] all material factual allegations in the complaint as true,"

---

[5] The declaration filed by Plaintiff's attorney that includes additional asserted material facts, Dell Decl., ECF 37, does not comply with the Court's Individual Practices and Rules or Local Civil Rule 56.1(b). These additional facts are not asserted within Plaintiff's 56.1 statement and are not listed in numbered paragraphs. *See* E.D.N.Y. & S.D.N.Y. Local Civil Rule 56.1(b) (opposing party's 56.1 counterstatement setting additional material facts must do so in numbered paragraphs containing a separate, short and concise statement); Individual Practices & Rules, Section III.C.3. ("If opposing party chooses to include additional facts alleged to be in dispute in their 56.1 Counter Statement, they must do so in a separately titled section, with each of the paragraph numbers consecutively following the response paragraphs.")

[6] Pl.'s Opp.; Pl.'s 56.1; Def.'s Reply; Def.'s 56.1 Reply.

but should "refrain from drawing inferences in favor of the party asserting subject matter jurisdiction." *Gonzalez v. Inn on the Hudson LLC*, 20-CV-9196, 2022 WL 974384, at * 2 (S.D.N.Y. Mar. 30, 2022). Further, a district judge "may consider evidence outside of the pleadings to resolve the disputed jurisdictional fact issues." *Id.*; *Ighile v. Kingsboro ATC*, 16-CV-4294 (AMD) (JO), 2018 WL 1970737, at *2 (E.D.N.Y. Apr. 25, 2018) (court can consider affidavits and exhibits when assessing subject-matter jurisdiction).

### C.    Federal Rule of Civil Procedure 56

In resolving a motion for summary judgment, the Court must undertake "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Under Rule 56, a court must grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law[,]" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating that no genuine issues of material fact exist. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once this burden is met, however, the burden shifts to the non-moving party to put forward some evidence establishing the existence of a question of fact that must be resolved at trial. *Spinelli v. City of N.Y.*, 579 F.3d 160, 166-67 (2d Cir. 2009); *see also Celotex Corp.*, 477 U.S. at 322-23. The non-moving party must show more than "[t]he mere existence of a scintilla of evidence" in support of his or her position; "there must be evidence on which the jury could reasonably find for the" non-movant.

*Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (quotation omitted).  In other words, to defeat summary judgment, the non-moving party must go beyond the pleadings and "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed.  *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984).  Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996).

The parties "must support" their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or, alternatively, by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B).  Courts must view the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970).  However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247-48.

## DISCUSSION

Plaintiff asserts that, on June 3, 2019, Decedent fell and broke his hip when he went to the bathroom unescorted at Northport VA Medical Center.  Compl. ¶¶ 18-20.  She asserts that this medical center committed medical malpractice in providing treatment to Decedent, *id.* ¶¶ 19, 34; that Decedent lacked informed consent of the risks of treatment rendered, *id.* ¶¶ 24-26; and that Defendant was negligent in hiring and supervising staff at the Northport VA Medical Center, *id.* ¶¶ 29-30.  She further asserts that the medical malpractice led to Decedent's wrongful death ten months later, on March 29, 2020, at NSUH.  *Id.* ¶¶ 34-36.

Defendant seeks dismissal of this action on several grounds.  First, Defendant argues that the Court lacks subject matter jurisdiction over Plaintiff's negligence, lack of informed consent, and medical malpractice claims.  Specifically, the United States asserts that because the Department of Veterans Affairs did not receive Plaintiff's administrative claim until more than two years after the date of Decedent's fall on June 3, 2019—the accrual date for these claims— Plaintiff's claims are untimely.  Def.'s Mem. at 10.  Second, Defendant argues that Plaintiff lacks standing to bring a wrongful death cause of action because she was not a duly authorized executor when she commenced this action.  *Id.* at 11. Third, Defendant argues Plaintiff failed to exhaust administrative remedies regarding these claims.  *Id.* at 8.  Alternatively, Defendant argues that it is entitled to summary judgment on Plaintiff's medical malpractice and wrongful death claims because Plaintiff failed to produce an expert witness to support causation and failed to make a prima facie case of negligence.  *Id.* at 14, 16.

In response, Plaintiff does not assert that she timely filed an administrative claim but instead requests the Court excuse her delay.  Pl.'s Opp. at 5-6.  Plaintiff does not dispute that the preliminary letters testamentary did not authorize her to commence this action.  Rather, she argues

that the Covid-19 pandemic caused delays in the Surrogate's Court to obtain unrestricted letters testamentary. *Id.* at 6-7. Further, Plaintiff argues that she should be afforded more time to obtain an expert witness to support causation on her wrongful death claim. *Id.* at 8. Lastly, Plaintiff argues that she has made a prima facie case of negligence. *Id.*

A.    **The FTCA's Exhaustion and Presentment Requirement**

A plaintiff asserting claims under the FTCA "bears the burden of proving subject matter jurisdiction by a preponderance of the evidence" and that "she exhausted her administrative remedies by presenting her claims to the appropriate federal agency before filing suit." *Cooke v. United States*, 918 F.3d 77, 80 (2d Cir. 2019) (citations omitted), *cert. denied*, 139 S. Ct. 2748 (2019). The FTCA's implementing regulation provides that "a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident . . . ." 28 C.F.R. § 14.2(a); *see Cooke*, 918 F.3d at 81 ("A plaintiff satisfies the requirement when 'a Federal agency *receives* from a claimant . . . an executed Standard Form 95 or other written notification of an incident.'") (quoting 28 C.F.R. § 14.2) (emphasis in original). The mailbox rule—the common law presumption that a mailing has been timely received by the attended addressee—does not apply to FTCA claims. *Cooke*, 918 F.3d at 81-82 ("We now hold that the mailbox rule is inapplicable to claims brought under the FTCA, and that therefore the mere mailing of a notice of claim does not satisfy the FTCA's presentment requirement.").

As a precondition for suit under the FTCA, an administrative claim must be filed with the appropriate federal agency within two years after such claim accrues. 28 U.S.C. § 2401(b). "A claim under the Federal Tort Claims Act accrues on the date that a plaintiff discovers that he has been injured," *Valdez v. United States*, 518 F.3d 173, 177 (2d Cir. 2008), or at the time that a

plaintiff "has or with reasonable diligence should have discovered the critical facts of both [her] injury and its cause," *Corcoran v. New York Power Authority*, 202 F.3d 530, 544 (2d Cir. 1999) (citation omitted).

Adequate presentment of a claim under the FTCA requires "a written notice of [the] claim which provides enough information to enable an agency to investigate and ascertain the strength of a claim," including sufficient information for the agency to "estimate the claim's worth." *Collins v. United States*, 996 F.3d 102, 109, 111 (2d Cir. 2021); *Romulus v. United States*, 160 F. 3d 131, 132 (2d Cir. 1998). Such notice must provide the agency "sufficiently specific information as to the basis of the claim, the nature of claimant's injuries, and the amount of damages sought such that the agency can reasonably understand what it must investigate to determine liability, to value the claim, and to assess the advisability of settlement." *Collins*, 996 F.3d at 119.

### 1.    Plaintiff Did Not Timely Present Her Negligence and Medical Malpractice Claims Based on Eisner's Fall on June 3, 2019

Here, Plaintiff's negligence and medical malpractice claims that are premised on Decedent's fall at Northport VA Medical Center accrued on June 3, 2019, because she knew of Decedent's injuries at that time. Therefore, for her claims to be timely presented, Plaintiff's SF-95 should have been received by the Department of Veterans Affairs no later than June 3, 2021.

Plaintiff's SF-95 was mailed to the Department of Veterans Affairs on June 3, 2021, but the scanned envelope shows the Department of Veterans Affairs did not receive the mailing until June 8, 2021. Standard Form 95 at 4. In fact, the Department of Veterans Affairs sent a letter to Plaintiff's counsel stating that it "received [Plaintiff's] tort claim on June 8, 2021." Compl. Ex. A, at 11. Because the Department of Veterans Affairs did not receive Plaintiff's SF- 95 for negligence and medical malpractice claims related to the June 3, 2019 fall, until June 8, 2021, over

two years after the incident at Northport VA Medical Center, Plaintiff's negligence and malpractice claims are untimely.

### 2. Equitable Tolling Does Not Apply to Plaintiff's Claims Premised on Eisner's June 3, 2019 Fall

Plaintiff does not dispute that she did not timely present her claims related to Decedent's fall on June 3, 2019, to the Department of Veterans Affairs. *See* Pl's Opp. at 5. Rather, Plaintiff argues that the Court "should excuse an approximate three-day delay in [Defendant's] receipt of the [SF-95] for purposes of advancing this litigation" because her June 3, 2021 mailing of the form was made "as soon as was reasonably practicable considering the pending Surrogate's Court application for letters testamentary" and that the form was "sent out on a preliminary basis in an effort to preserve [Plaintiff's] ability to commence an action against [Defendant], notwithstanding the fact that preliminary letters testamentary had not yet been issued." *Id.* at 5, 6.

"Equitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances." *Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996) (citing *Bowers v. Transportacion Maritima Mexicana, S.A.*, 901 F.2d 258, 264 (2d Cir. 1990)). A plaintiff seeking equitable tolling of a limitations period bears the burden of establishing two elements: (1) that she has been pursuing her rights diligently during the period which she now seeks tolling and (2) that some extraordinary circumstance stood in her way and prevented her from timely filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *Holland v. Florida*, 560 U.S. 631, 649 (2010); *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2011). In FTCA actions, courts apply "the doctrine of equitable tolling 'in rare and exceptional circumstances,' where [there exist] 'extraordinary circumstances' [that] prevented a party from timely performing a required act and that party 'acted with reasonable diligence

throughout the period he [sought] to toll.'" *Czernicki v. U.S. DOJ*, 137 F. App'x 409, 410 (2d Cir. 2005) (last alteration in original) (quoting *Doe v. Menefee*, 391 F.3d 147, 159-60 (2d Cir. 2004)).

Plaintiff's counsel asserts the following facts with respect to the presentment of Plaintiff's claims related to Eisner's June 3, 2019 fall[7]: he completed the SF-95 and sent them to Plaintiff for review on April 16, 2020; in May 2020, he advised Plaintiff to retain an estate attorney to facilitate her appointment as a representative of Decedent's estate "prior to commenc[ing] any Federal Claim" and referred her to an attorney within his firm; on or about June 9, 2020, he advised Plaintiff that "the Federal Claim must be received by the Defendant by [June 3, 2021], based on the accrual of the claim on [June 3, 2019]"; between June 2020 and November 2020, Plaintiff was still deciding whether to retain the referred estate attorney; on November, 16, 2020, Plaintiff retained the estate attorney and planned on providing him with documentations necessary to obtain preliminary letters; and, on May 20, 2021, Plaintiff's counsel was advised that the probate proceedings in Surrogate Court "were pending[.]" Pl's Opp. at 3-5. These unsworn and unsupported statements not set forth in an affidavit or declaration are insufficient to oppose summary judgment. *See* Fed. R. Civ. P. 56(c) (requiring that "[a] party asserting that a fact ... is genuinely disputed must support the assertion by" "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"); *Smith v. Astrue*, 11-CV-3812 (SLT) (LB), 2013 WL 1344898, at *2 (E.D.N.Y. July 31, 2013) (noting the lack of "any affidavits or documents" to

---

[7] These facts are set forth in Plaintiff's memorandum of law in opposition under a header titled "Timeline of Events Relevant To This Action and Motion Practice." Pl's Opp. at 3. These facts were not previously set forth in prior case filings or proffered during discovery.

oppose summary judgment and to raise facts demonstrating that plaintiff was entitled to equitable tolling).

Putting aside this procedural defect, even if the Court were to accept these newly alleged facts, Plaintiff's unsworn statements "fall short of establishing the kind of 'extraordinary circumstances' required in the Second Circuit to toll the statutory period to file an FTCA claim." *Cuello v. United States*, 11-CV-2216 (KAM), 2013 WL 1338839, at *9 (E.D.N.Y. Mar. 29, 2013) (quoting *Czernicki*, 137 F. App'x at 410). Plaintiff was in possession of a complete SF-95 as of April 2020 and knew as early as June 2020—nearly a year in advance—that the SF-95 must be received by Defendant no later than June 3, 2021. Plaintiff attempts to explain the delay by saying that Plaintiff did not retain an estate attorney to file an application to obtain letters testamentary until November 2020. But that explanation does not withstand scrutiny for two reasons. Plaintiff has not explained her inaction between November 2020 (when she retained the estate attorney) and June 3, 2021 (when the SF-95 should have been received by Defendant). Nor has she articulated why she waited until November 2021 to file the application for letters testamentary. *Cf. Cuello*, 2013 WL 1338839, at *9 (noting that even a "putative FTCA claimant's ignorance of the initiation procedure or statute of limitations" is insufficient to warrant equitable tolling of the FTCA). Thus, Plaintiff's own explanation, albeit unsworn, does not substantiate or support her assertion that the SF-95 was mailed "as soon as was reasonably practicable considering the pending Surrogate's Court application for letters testamentary" and was "sent out on a preliminary basis in an effort to preserve [Plaintiff's] ability to commence an action against [Defendant]." Pl.'s Opp. at 5, 6.

Finally, Plaintiff's suggestion that the Covid-19 pandemic delayed the Surrogate Court's issuance of the preliminary letters fares no better. "[A] plaintiff must plead more than the existence

14

of the pandemic to show the extraordinary circumstances required for equitable tolling." *Rodriguez v. Hudson Valley Chrysler*, 20-CV-9646, 2021 WL 5910173, at \*3 (S.D.N.Y. Dec. 14, 2021); *see Jamieson v. United States Postal Serv.*, 20-CV-06184 (NGG) (RML), 2022 WL 43767, at \*2 (E.D.N.Y. Jan. 5, 2022) (denying request to equitably toll the FTCA's deadlines where plaintiff "never actually articulated how the pandemic personally affected her"). Here, Plaintiff submits that, "[i]n light of the extensive and debilitating effect of the Covid-19 pandemic, more particularly upon the Surrogate Courts of the state of New York," "any willful, or contumacious behavior on [her part] in failing to obtain unrestricted letters" is "clearly not present in this case." Pl's Opp. at 5. Again, Plaintiff does not articulate how the pandemic specifically prevented her from filing her application in Surrogate Court as early as January 2021. There is no credible proffered "link of causation between the extraordinary circumstances and the failure to file." *Gunn v. Aquafredda*, 19-CV-10039 (CS), 2021 WL 3115488, at \*5 (S.D.N.Y. July 21, 2021) (quotation and citation omitted). That Plaintiff *did obtain preliminary letters during the Covid-19 pandemic*—admittedly not the estate authority she had sought—undermines her assertion that the Surrogate Court was delayed in issuing testamentary letters *because of Covid-19*. Indeed, "the general effects of the pandemic and the governmental response have not halted the operations of law offices or the courts." *Hood v. Cath. Health Sys., Inc.*, 20-CV-673, 2020 WL 8371205, at \*7 (W.D.N.Y. Sept. 28, 2020).

Extraordinary refers "not to the uniqueness of a party's circumstance, but rather to the severity of the obstacle impeding compliance with a limitations period." *PT Rahajasa Media Internet v. Telecomm. & Informatics Fin. Provider & Mgmt. Ctr.*, 20-CV-11035 (PGG) (OTW), 2022 WL 992841, at \*4 (S.D.N.Y. Mar. 31, 2022). Here, "[t]he record clearly indicates that [Plaintiff] failed to file a timely administrative claim, and [she] presented no evidence to [the

Court] demonstrating that extraordinary circumstances warrant the tolling of the statutory period." *Czernicki*, 137 F. App'x at 411. Equitable tolling therefore does not apply here. Consequently, Plaintiff's claims for negligence and medical malpractice were untimely submitted to the Department of Veterans Affairs and therefore are dismissed for lack of subject-matter jurisdiction.

### 3.    Plaintiff Adequately Presented Her Wrongful Death Claim

Plaintiff adequately presented a claim for wrongful death in the SF-95 and timely provided sufficient information to the Department of Veterans Affairs to investigate that claim. Indeed, Plaintiff provided a statement of claim under the "personal injury/wrongful death" section that included the name of the Decedent, the date of death (March 29, 2020), what she alleged caused Decedent's wrongful death, and placed a value on her wrongful death claim at $500,000. *See* Standard Form 95 at 2. This is sufficient notice of the wrongful death claim. *See Collins*, 996 F.3d at 112, 119; *see also Lee v. U.S. Dept. of Army*, 11-CV-331 (RRM) (CLP), 2013 WL 4048329, at *4 (E.D.N.Y. Aug. 9, 2013) ("[n]otice need not meet formal pleading requirements as long as it is specific enough to serve the purposes underlying § 2675(a)—'to ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims.'") (quoting *Romulus v. United States*, 983 F. Supp. 336, 338 (E.D.N.Y. 1997), *aff'd*, 160 F.3d 131 (2d Cir. 1998)). Consequently, the Court considers the merit of Plaintiff's wrongful death claim.

### B.    Plaintiff's Cause of Action for Wrongful Death

### 1.    Whether Plaintiff was Authorized to Bring Suit on Behalf of Eisner's Estate for Wrongful Death

To bring suit on behalf of a decedent under New York law, a plaintiff must (1) be a "a duly appointed personal representative," or (2) plead "extraordinary circumstances" that "authorize [her] to bring a claim on behalf of the estate" in a capacity other than as personal representative.

16

*Hartke v. Bonhams & Butterfields Auctioneers Corp.*, 22-CV-3571 (PGG), 2024 WL 246139, at *6 (S.D.N.Y. Jan. 23, 2024), *aff'd sub nom. Hartke ex rel. Est. of Hartke v. Bonhams & Butterfields Auctioneers Corp.*, 24-258, 2024 WL 4380315 (2d Cir. Oct. 3, 2024); *see also Aetna Life Ins. Co. v. Frank*, 592 F. Supp. 3d 317, 322 (S.D.N.Y. 2022). A "personal representative," is defined as someone that "received letters to administer the estate of a decedent," and is the only party who may bring a wrongful death or survival action. *See* N.Y. Est. Pow. and Trst. § 5–4.1; id. at § 1–2.13.

Defendant argues that Plaintiff was not authorized to bring a wrongful death lawsuit in federal court because, "although Plaintiff received preliminary letters testamentary, Plaintiff never received authorization from the Surrogate's Court to commence this lawsuit on behalf of [Eisner's estate] and [therefore] lacks capacity to pursue this [action]." Def.'s Mem. at 12. Defendant contends that Plaintiff sought letters testamentary "for the specific purpose of brining a medical malpractice suit only as against Northshore Hospital, NYU, and Glengariff Rehabilitation" and obtained "restricted letters testamentary that allowed only for the collection and marshaling of assets." *Id.* at 11.

The Surrogate Court preliminary letters testamentary issued on December 2, 2021, states the "preliminary executor shall retain sole custody and control of all the assets of the estate" and that the "preliminary letters are restricted solely to allow for the marshalling and collection of estate assets." Order for Preliminary Letters Testamentary, *In the Matter of the Probate Proceeding of Stanley Stuart Eisner, a/k/a Stanley Eisner*, File No.: 2021-2158 (Surrogate's court of the State of New York, Dec. 2, 2021). Thus, Plaintiff was not a duly appointed executor,

administrator, or personal representative of her father's estate at the time she commenced the lawsuit.[8]

Plaintiff has not pointed to any record evidence to demonstrate "extraordinary circumstances," such as fraud or intentional misrepresentation, which would allow her to bring claims in federal court. *See Hartke*, 2024 WL 246139, at *6. "Extraordinary circumstances" may arise (1) "where the executor is allegedly directly involved in purported egregious conduct and self-dealing that negatively impacts the potential assets of the estate," (2) in "cases of collusion, of insolvency of the personal representatives, of refusal by them to sue, whether collusively or bona fide" or (3) where "other special circumstances [exist,] such as the fraudulent transfer of the trust property by the personal representatives themselves." *Id.* (citations omitted). As set forth above, *see* Discussion Section A.2, Plaintiff's argument that Covid-19 delayed the Surrogate Court's order does not constitute extraordinary circumstance under applicable law. *Mosca v. United States*, 602 F. Supp. 3d 344, 347 (E.D.N.Y. 2022).

Here, Plaintiff requests that the Court "consider the fact that Plaintiff on or about [July 12, 2022] obtained unrestricted" letters "to advance this action."[9] Pl.'s Opp. at 7. Courts in this circuit have allowed "substitution to replace invalid estate administrators" under Rule 17(a)(3).[10] *See, e.g.*, *Fletcher v. City of New London*, 16-CV-241 (MPS), 2017 WL 690533, at *5 (D. Conn. Feb. 21, 2017); *Yien-Koo King v. Wang*, 14-CV-7694 (JFK), 2018 WL 1478044, at *4, 6 (S.D.N.Y.

---

[8] In other cases where preliminary letters testamentary were found to duly authorize a plaintiff to sue, these letters either did not contain any restrictive language or expressly and fully authorized the pursuit of all claims on behalf of the estate. *See e.g., King v. Wang*, 2018 WL 2186408, at *2 (S.D.N.Y. May 11, 2018) (finding plaintiff had standing to sue where preliminary letters testamentary stated that plaintiff as "preliminary executrix has the capacity and authority to advance claims seeking relief on behalf of the Estate").

[9] Plaintiff has not produced the July 12, 2022 unrestricted letters, this assertion is not set forth in an affidavit, and is raised for the first time in opposition papers. Defendants, however, do not dispute or contest their issuance.

[10] Federal Rule of Civil Procedure 17(a)(3) provides that a "court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." FED. R. CIV. P. 17(a)(3).

Mar. 26, 2018) (court allowed plaintiff, who previously lacked standing, to proceed with action after appointment as preliminary executrix because the appointment was "essentially a technical change that in no way alters the factual allegations in the amended complaint"); *Estwick v. U.S. Air Shuttle*, 950 F. Supp. 493, 498-99 (E.D.N.Y. 1996) (holding that defect in plaintiff's standing without appointment as administratrix was cured by plaintiff's subsequent appointment thereof and reasoning that ruling otherwise would be "contrary to the liberal policy underlying [Rule 17(a)]"); *Brohan ex rel. Brohan v. Volkswagen Mfg. Corp. of Am.*, 97 F.R.D. 46, 48, 49 (E.D.N.Y. 1983) (permitting plaintiff to amend complaint upon appointment as executrix almost three years after suit because "[p]laintiff's lateness in obtaining and pleading her appointment as executrix is the kind of technical mistake apparently contemplated by Rule 17(a)").

Here, Plaintiff's lateness in her appointment as executrix of Decedent's estate "is essentially a technical change that in no way alters the factual allegations in the [complaint]," which is contemplated by Rule 17(a)(3). *Yien-Koo King*, 2018 WL 1478044, at *6; *see also Fletcher*, 2017 WL 690533, at *6 ("A Rule 17(a) substitution of plaintiffs should be liberally allowed when the change is merely formal and in no way alters the original complaint's factual allegations as to the events or the participants."). Substitution serves the interests of justice, where, as here, the statute of limitations may run on the wrongful death claim. *Levinson v. Deupree*, 345 U.S. 648, 652 (1953) (permitting plaintiff to amend action to allege appointment as administrator "at a time when applicable statute of limitations would bar a new suit"); *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20 (2d Cir. 1997) (allowing substitution "to avoid injustice"). Defendants are also not prejudiced by substitution because "they had clear notice of the claims against them in the [complaint]." *Fletcher*, 2017 WL 690533, at *6.

19

### 2.    Defendant is Entitled to Summary Judgment on Plaintiff's Wrongful Death Cause of Action

To recover damages for wrongful death, the plaintiff must prove: (1) the death of a human being; (2) a "wrongful act, neglect or default of the defendant" that caused the decedent's death; (3) the survival of distributees who suffered pecuniary loss by reason of the decedent's death; and (4) the appointment of a personal representative of the decedent. *Cerbelli v. City of New York*, 600 F. Supp. 2d 405, 429 (E.D.N.Y. 2009) (citing *Chong v. N.Y.C. Transit Auth.*, 441 N.Y.S.2d 24, 25 (App. Div. 1981)).  Defendant argues it is entitled to judgment as a matter of law on the wrongful death claim because Plaintiff has failed to present evidence in the form of expert testimony of any casual nexus between Defendant's actions and Decedent's death.  Def.'s Mem. at 15.

Plaintiff stated in the SF-95 that Decedent died "of complications from the slip and fall on [June 3, 2019] including acute left interior comminuted pubis ram[u]s fracture, and acute fracture of left superior pubic acetabular junction."  Standard Form 95 at 2.  The verified complaint asserts that Decedent's death was the "result of the medical malpractice, carelessness, recklessness, unskillfulness, and negligence" of Defendant, *see* Compl. ¶ 34, and Plaintiff's additional material facts also assert that the medical treatment Decedent received for his chronic kidney disease and for the injuries he suffered from the fall caused his death, *see generally* Dell Decl. (relying exclusively on Plaintiff's own deposition testimony to assert these facts).

"[W]here the nexus between the death and the alleged cause would not be obvious to the lay juror, expert evidence is often required to establish the causal connection between the challenged actions and the physical or mental injury." *Glowczenski v. Taser Int'l, Inc.*, 928 F. Supp. 2d 564, 584 (E.D.N.Y. 2013) (*Glowczenski I*), *aff'd*, 594 F. App'x 723 (2d Cir. 2014) (*Glowczenski II*).  Indeed, "[e]xpert medical opinion evidence is usually required to show the cause of an injury or disease because the medical effect on the human system of the infliction of injuries

is generally not within the sphere of the common knowledge of the lay person." *Barnes v. Anderson*, 202 F.3d 150, 159 (2d Cir. 1999) (alteration in original) (quoting *Shegog v. Zabrecky*, 36 Conn. App. 737, 746 (App. Ct. 1995)). This is "by no means limited to the medical malpractice context,"[11] *see id.* at 160, but it applies also to wrongful death claims, *Nealy v. U.S. Surgical Corp.*, 587 F. Supp. 2d 579, 585-87 (S.D.N.Y. 2008).  Plaintiff's claims appear to be medical in nature and are therefore outside the sphere of a layperson's common knowledge.   As such, expert testimony is required to establish proximate causation.  *See Nealy*, 587 F. Supp. 2d at 587.

Here, Plaintiff has not presented expert testimony or a supporting medical opinion in the form of a declaration or affidavit.  Without such testimony, Plaintiff cannot establish causation necessary to prove her claim for wrongful death or to create a genuine issue of material fact.[12] Accordingly, Defendant is entitled to summary judgment as a matter of law.  *Glowczenski II*, 594 F. App'x at 725 (affirming dismissal of wrongful death claim "for want of evidence on causation"); *Nealy*, 587 F. Supp. 2d at 587 ("[T]o defeat [defendant's] Rule 56 motion [for summary judgment], [Plaintiff] must submit expert medical opinion supporting her theory of causation [on wrongful death claim]; without such evidence, the Court must grant [defendant's] motion."); *cf. Celotex Corp.*, 477 U.S. at 322–23 ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of

---

[11] As previously stated in Discussion Section A.1, Plaintiff's medical malpractice claim is dismissed as untimely. To the extent the Court has jurisdiction over such claim, Defendant is nonetheless entitled to judgment because Plaintiff has not presented expert opinion to sustain that claim. *Smith v. Masterson*, 353 F. App'x 505, 508 (2d Cir. 2009) (affirming summary judgment on medical malpractice claim where plaintiff did not present expert evidence on causation to demonstrate the existence of any genuine issue of material fact).

[12] Plaintiff's request that the Court afford her more time to obtain an expert witness, to the extent it seeks to reopen discovery, is denied. *Glowczenski II*, 594 F. App'x at 725 (denial of motion to reopen discovery upheld where plaintiff waited nearly six months after learning its originally-disclosed expert would be excluded before moving to reopen discovery to introduce a substitute expert). Here, Plaintiff has not even identified an expert or proffered an expert opinion. *Id.*

an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

## CONCLUSION

For the foregoing reasons, Defendant's motion is granted, and Plaintiff's complaint is hereby dismissed.  The Clerk of Court is directed to close this action.


**SO ORDERED.**

/s/
ORELIA E. MERCHANT
United States District Judge

February 26, 2025
Brooklyn, New York

22